### Succession of BAIRDAIN.

### No. 2223.

Court of Appeal of Louisiana. First Circuit.

March 4, 1941.

Porteous, Johnson & Humphrey, of New Orleans, for appellants.

Ellis, Ellis & Barranger, of Covington, for appellee.

DORE, Judge.

William Bairdain, a resident of the Parish of St. Tammany, departed this life on February 20, 1940. He left a will in which he named J. P. Brundige as executor; the will was duly probated, and Mr. Brundige was appointed and qualified as executor thereof and in due course the executor filed his final account. On his final account, the executor recognized and proposed to pay Mrs. L. Groeschner, as a creditor of the said estate, the sum of $730 for personal services rendered by Mrs. Groeschner as a practical nurse to the decedent during one year preceding his death.

The surviving widow and his two children, sole heirs of the deceased, filed an opposition to the account opposing the payment of this item on the ground that the said Mrs. Groeschner is not entitled to any amount for nursing the deceased for the following reasons: That several years prior to his death, the deceased had deeded to Mrs. Groeschner a piece of property without consideration; that the deceased had paid all of the household expenses where both he and Mrs. Groeschner lived; that it never was the intention of the deceased to pay nor the intention of Mrs. Groeschner to receive any pay for such nursing services; that Mrs. Groeschner only expected a bequest by the deceased in his will; and that when she found out that she had not been bequeathed anything by the deceased, she filed this claim against the estate in order to get something out of the estate.

This opposition was heard and the trial judge reduced the claim of Mrs. Groeschner to the amount of $704 and dismissed the opposition. The opponents have appealed; the executor has answered the appeal, asking that the judgment be amended by increasing the amount allowed to $730, the original amount claimed by Mrs. Groeschner and carried on the tableau.

It appears from the testimony that the deceased had been estranged from his family in New York for some twenty years prior to and up to his death. He had retired from his position with a pool cotton company on account of his health, the exact date not being shown but certainly prior to March 20, 1936, and was receiving a substantial pension from this company. It seems that he had been boarding with Mrs. Groeschner at New Orleans for several years, and upon retirement he purchased a lot and home at Slidell, St. Tammany Parish, and he and Mrs. Groeschner moved to Slidell on account of his illness. In 1935, he was operated on and necessarily Mrs. Groeschner's duties became more burdensome. On March 20, 1936, he made a deed of the Slidell property to Mrs. Groeschner for a recited cash consideration of $750. In a letter, of even date with this deed, addressed to Mrs. Groeschner, he stated that this deed was made to repay her for services in nursing and taking care of him at intervals during the past seventeen years; he further admits that her nursing was of more value, regardless of the fact that there never was any fixed compensation for such services. After this property was conveyed to Mrs. Groeschner, the deceased continued to board with her and paid her $50 per month for board and lodging.

It appears that the decedent did not receive much benefit from the operation performed in 1935; the disease continued to grow worse, finally being diagnosed as a cancer of the prostate or bladder. He was operated for this trouble the latter part of February, 1939, about a year prior to his death. He remained in the hospital for some thirteen days and then returned to Slidell. It appears that he occasionally needed the services of Mrs. Groeschner prior to this operation, and more so after his return from New Orleans. He was up part of the time and was able to get about with a little assistance, but it is clear to us, and was clear to the trial judge, that he needed more attention and nursing from the time of his return from New Orleans to the time of his death. He was unable to retain his urine and suffered such intense pain that it was necessary to administer narcotics at frequent intervals to relieve his pains. The deceased was 76

years old at the time of his death, and it is obvious to us that a man at that age afflicted with such a terrible disease, growing progressively worse, needed the assistance of someone during the period of a year or more prior to his death. It is evident that during the year prior to his death the decedent was able to make a few trips to New Orleans for medical treatment and for the attendance of lodge meetings and for the funeral of a brother member of his lodge, yet he would return to Slidell on the same day or the day thereafter, and required the attention of someone while on such trips, due to his condition.

Mrs. Groeschner nursed the decedent prior to and after his operation in 1935. In accordance with the letter of decedent of date of March 20, 1936, she was partially paid for such services by the deed of property to her by decedent, but thereafter she continued to nurse him. The weight of the testimony makes it certain that she did render services for which she should be paid. They were known at that time. The second operation took place the latter part of February, 1939, making it more burdensome on her part. The evidence does not disclose any attempt to recover for services to which she would not have had a right had she insisted upon payment prior to Mr. Bairdain's death. She is entitled to her just claim from his succession. It remains for us to fix the amount of the compensation.

The evidence is replete to the effect that such services as rendered by Mrs. Groeschner was well worth the sum of $2 per day for the full year prior to Mr. Bairdain's death; in fact, this is the minimum price set by the witnesses. In 1935, Mr. Bairdain was referred to Drs. Walther & Willoughby by Dr. Griffith, his physician, as a surgical case. His first visit to Dr. Willoughby was on February 12, 1935; he was operated upon the latter part of February, 1935. However, as previously stated, the decedent's condition did not improve but became worse, necessitating a second operation the latter part of February, 1939, within a year prior to his demise. The deceased became bed-ridden in October, 1939, necessitating day and night nursing up to his death.

The trial court, in his judgment, did not allow Mrs. Groeschner pay for the thirteen days which the decedent spent in the hospital in New Orleans. However, the trial court lost sight of the fact that the claimant was averaging her daily pay. Some of the days during the year she was doing double duty which were well worth twice or more the wage which she claims; we realize that her time on each day was not entirely taken up in rendering the services for which she claims payment but we are convinced by the evidence that, as a whole, her charge of $2 per day, on an average, is fair compensation for a year's services preceding the death of the late Mr. Bairdain, and that the trial court erred in not allowing her the full year.

It is therefore ordered that the judgment appealed from be amended by increasing the amount awarded to Mrs. L. Groeschner from $704 to the amount of $730, and as thus amended the judgment is affirmed, at the costs of the opponents-appellants in both courts.